RICHARD HACKETT, Appellant, v. FREEMAN & GRAVES, *et al.*

**Evidence:** DECLARATIONS OF ACCOMPLICE: *Conspiracy.* Declarations of a thief, made before the theft, that he had made arrangements to sell property of plaintiff to defendant, and declarations after the theft that he had sold the property to defendant, are not a part of the *res gestæ* and are not admissible against defendant, if made in his absence, unless a conspiracy between him and the thief is shown.

**Witness:** IMPEACHMENT. The pendency of an appeal from a judgment of conviction does not render the conviction incompetent for the purposes of Code 1873, section 3648, providing that a witness may be interrogated as to his previous conviction for a felony, but no other proof of such conviction is competent except the record thereof.

SAME. A "conviction" as used in said statute requires both a verdict of guilty and judgment thereon.

*Appeal from Pottawattamie District Court, at Avoca.—* HON. W. R. GREEN, Judge.

MONDAY, OCTOBER 18, 1897.

ACTION at law to recover the value of eight hogs alleged to have been taken from the plaintiff wrongfully, and converted by the defendants to their own use. There was a trial by jury, and a verdict and judgment for the defendants. The plaintiff appeals.— *Reversed.*

*Benjamin & Preston* for appellant.

*Turner & Cullison* for appellees.

ROBINSON, J. — The defendants are the co-partnership of Freeman & Graves, and W. H. Freeman and Henry Graves, the partners who compose the firm. The plaintiff claims that in the latter part of March in the year 1894 eight hogs which he had were stolen from him and sold to the defendants, and that the defendants received the hogs, and converted them to their own use. This action is brought to recover the value of the hogs.

I.   Edwin Bird testified that he and G. A. Brown stole the hogs in question from the plaintiff about 11 o'clock at night, and drove them to Brown's place, where they were at once loaded into wagons, and that Brown started with them for Oakland early the next morning. The defendant Graves admits that he purchased of Brown, in Oakland, eight hogs, a little after sunrise the next morning.   Bird also testified that, before the hogs were taken Brown told him that he had arranged with Graves to take all the hogs he could get from the plaintiff. The district court admitted that testimony to show the arrangement between Bird and Brown, but not as binding on Graves, and of that the plaintiff complains. Bird further testified that he did not go with the hogs to Oakland, but that he met Brown at that place about 11 o'clock of the morning the hogs were taken there, and that Brown said that he had sold them to Graves. The court sustained an objection to that testimony, and of that ruling the plaintiff also complains. We think that both rulings were correct. The statements of Brown made in the absence and without the knowledge of Graves were not evidence against him. Those testified to were not made at the time of the taking and selling. The first one was made

before the enterprise is said to have been commenced, and the last one was made after it had closed. Therefore, neither was a part of the *res gestae.* It is claimed that there was evidence of a conspiracy, to which Bird, Brown, and Graves were parties, and that the statements were admissible as the declarations of a co-conspirator. We doubt there having been any evidence of a conspiracy, competent as against the defendants, and there was certainly none at the time the rulings in question were made. Moreover, the statements shown were not made during the existence of the alleged conspiracy, and in aid of the common design. The court might well have said that the statements in question were not binding on any of the defendants, but its failure to do so, and its limiting their effect to Graves alone, could not have prejudiced the plaintiff.

II.    Brown testified for the defendants that the hogs he sold were his own. On cross-examination he testified that he did not think that he had ever been convicted for a felony, and, when asked if he knew, answered in the negative. The plaintiff offered in evidence records of the district court of Pottawattamie county, which showed that Brown had been tried for the crime of larceny, found guilty by the jury, and adjudged to be imprisoned in the state penitentiary at Fort Madison, at hard labor, for the term of two years, and to pay the costs of the prosecution. It also appeared that Brown had taken an appeal from the judgment, and filed an appeal bond. The offered records were excluded by the court, and we are asked to review that ruling. Formerly persons rendered infamous by reason of the commission of heinous offenses were incompetent to testify as witnesses. Under the statutes of this state, they are competent if of sufficient capacity to understand the obligation of an oath, but "facts which have heretofore caused the

exclusion of testimony may still be shown for the purpose of lessening its credibility." Section 3648 of the Code of 1873 was enacted in aid of the change in the law thus made, and is as follows: "A witness may be interrogated as to his previous conviction for a felony. But no other proof of such conviction is competent except the record thereof." It is the theory of the defendant that the trial, verdict, and judgment of the district court cannot be regarded as a conviction, within the meaning of the statute, while the appeal is pending. The word "conviction," as applied to criminal offenses, has different meanings. A man may be self-convicted by confession, or he may be convicted by the verdict of a jury before judgment. Thus, in *Commonwealth v. Lockwood,* 109 Mass., 325, it is said: "The ordinary legal meaning of 'conviction,' when used to designate a particular stage of a criminal prosecution triable by a jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt, while 'judgment' or 'sentence' is the appropriate word to denote the action of the court before which the trial is had, declaring the consequences to the convict of the fact thus ascertained." See, also, *Schiffer v. Pruden,* 64 N. Y. 52; *Blair v. Commonwealth,* 25 Grat. 850, and notes; 1 McClain, Criminal Law, section 110; 1 Bishop, Criminal Law, section 361. But, as often used, the word includes both the ascertaining of the guilt of the accused and judgment thereon by the court. *Blaufus v. People,* 69 N. Y. 107; *Schiffer v. Pruden, supra; Commonwealth v. Gorham,* 9 Mass. 452; *Smith v. Commonwealth,* 14 Serg. & R. 69; *Smith v. State,* 6 Lea, 637; *State v. Mooney,* 74 N. C. 98; 1 Greenleaf, Evidence, section 375. We

think as used in the statute quoted, the word has the meaning last given, and we next inquire, 4 does the taking of an appeal operate to so far suspend the judgment that it cannot be shown in evidence as affecting the credibility as a witness of the person convicted? Section 2223 of the Code authorizes the granting of a divorce to the wife of a man "when he is convicted of felony after his marriage." It was held in *Vinsant v. Vinsant,* 49 Iowa, 639, that the conviction there meant was not one from which an appeal was pending, and which might be reversed; and that holding was followed in *Rivers v. Rivers,* 60 Iowa, 380. See, also, *Rivers v. Rivers,* 65 Iowa, 569. Does the rule of those cases apply to the question under consideration? No appeal can be taken in a criminal case until after judgment has been rendered. Code 1873, section 4522. The appeal, when taken, does not affect the judgment, unless bail be put in, and, when that is done, the effect of the bail is to stay the execution of the judgment. Code 1873, section 4528. This court does not try the case anew, but it may affirm, reverse, or modify the judgment, and render such judgment as the district court should have rendered, and may, if necessary or proper, order a new trial. Code 1873, section 4538. If this court render a judgment of affirmance, the original judgment is to be executed as this court shall direct. Code 1873, section 4541. Hence, until the judgment of the district court is modified or reversed, it continues in force, although the right to execute it may be suspended. It is true in some cases, and may be true generally, not only that the right to execute the judgment is suspended, but that no action to enforce a right based upon it can be maintained pending an appeal, where bail is put in. To sustain such an action it must appear that the judgment is final. The judgment is not otherwise affected, however, before it is reversed or modified by this court. Until that time the conviction stands,

and may be shown as bearing on the credibility of the person convicted, when he testifies as a witness. It has been held in some cases, under peculiar statutes, that the conviction of a witness cannot be shown to discredit him as a witness, if he has taken an appeal therefrom which is undetermined. See *Jones v. State*, 32 Tex. Civ. App. 135 (22 S. W. Rep. 404; *Arcia v. State*, 26 Tex. App. 193 (9 S. W. Rep. 685). It has also been held that if an appeal has been taken from a judgment of conviction, and the case is dismissed by the state, pending the appeal, the conviction ceases to have any effect. *Card v. Foot*, 57 Conn. 431 (18 Atl. Rep. 713). But these cases have no application to the question we are considering. It follows from what we have said that the district court erred in excluding the record of Brown's conviction. For this error, the judgment of the district court is REVERSED.