192 So.2d 796 (1966)
Jeff WIGGEN, As Natural Father of Mattie Jo Wiggen, a Deceased Minor, Appellant,
v.
BETHEL APOSTOLIC TEMPLE, a Non-Profit Corporation, Doris R. Akins, and Kathleen D. Minus, Appellees.
No. 66-109.
District Court of Appeal of Florida. Third District.
December 13, 1966.
Rehearing Denied January 9, 1967.
*797 Frates, Fay, Floyd & Pearson and Larry S. Stewart, Miami, for appellant.
Dean, Adams, George & Wood, Miami, for appellees.
Before HENDRY, C.J., and CARROLL and SWANN, JJ.
HENDRY, Chief Judge.
Plaintiff, Jeff Wiggen, brought this action for the wrongful death of his eleven year old daughter, Mattie Jo Wiggen. The jury returned a verdict in favor of the defendants.
The issue involved is whether the doctrine of last clear chance is applicable in this situation involving the death of a pedestrian who was struck by an automobile. The trial judge refused to charge the jury on the doctrine of last clear chance. We reverse.
At approximately 4:30 P.M. on March 5, 1965, Kathleen D. Minus was driving kindergarten pupils home in a 1963 Chevrolet station wagon, which was owned by the Bethel Apostolic Temple and used by it as a school bus. Two children were discharged at the intersection of N.W. 72nd Street and 14th Place in Miami. The bus turned right and headed east on 72nd Street. The driver testified that she was familiar with the area and the fact that a great number of children played there in the afternoons. Because of this she took special care to make sure the road was clear before proceeding on 72nd Street. The bus was traveling at a speed of between 10-15 miles per hour when the driver felt something strike the bus. She carefully brought the bus to a stop, then looked back and saw *798 the deceased lying in the street. The driver testified that although she was looking straight ahead she never saw the deceased until after the accident.
The only eye witness was an eight year old boy who had been playing with the deceased prior to the accident. At trial the boy testified that they were playing with a belt and that when the deceased had hit at him with it he crossed the road. He also testified that the deceased was doing nothing when the bus hit her and that "a woman had come around a curb and Mattie Jo  the woman came on the side of the road and hit, and then a woman started to the next pole." An investigating officer was permitted to testify as to what the boy told him at the scene of the accident. He testified that the boy told him that he chased the deceased across the street with a belt  he saw the bus coming and stopped, but she did not. Doris Akins, an ordained minister of Pentecostal Assembly of the World, testified that on the night of the accident the boy told her that while playing with a belt, either the deceased was chasing him or he was chasing her and they ran across the street.
The investigating officers testified that the physical evidence indicated that the accident occurred three hundred feet east of 14th Place. The point of impact was six feet, four inches south of the north edge of 72nd Street, at which point the street is seventeen feet, eight inches wide and does not have a marked center line. There were no skid marks prior to impact. The skid marks began twenty-three feet, six inches after impact and continued for twenty-two feet, three inches. There are dents on the bus which made it appear that the deceased hit the left front of the bus. A vehicle doing fifteen miles per hour would travel 15-17 feet in the average reaction time of 3/4 seconds.
An investigating officer testified that the deceased crossed the street from the south side of the road but he did not know where in relationship to the south side of the road she came from. The pavement was wet and there were cars parked on the south side of the road.
The essential element of the doctrine of last clear chance which is involved herein is that the injuring party actually becomes aware of, or in the exercise of ordinary prudence should become aware of the perilous position of the injured party and thereafter have an opportunity, by exercise of reasonable care, to save the latter from harm.
The same element was involved in the case of Douglas v. Hackney, Fla. 1961, 133 So.2d 301. It was determined in that case that there was but a mere possibility that the deceased was visible in the roadway in a position of peril and that to require the trial judge to instruct upon the law of last clear chance would be to authorize a verdict entirely upon conjecture. There must be adequate evidentiary support for each of the essential elements required by the rule and the lack of eye witnesses often prevents recovery in situations in which perhaps recovery could be sustained if they were available.
In the instant case, the only eye witness was an eight year old boy whose testimony was of little use in determining the events which led up to the accident. However, the investigating officers performed their work efficiently. From the debris and blood in the street, the point of impact was determined. From dents on the bus, it became reasonable to infer that the deceased hit the left front of the bus. The investigation also indicated that the deceased was crossing the street from the south side of the road. Photographs taken at the scene of the accident and introduced into evidence indicate that although cars were parked on the south side of the street, there was some distance between the cars and the edge of the street. There was also a large area on the south side where no cars were parked.
Based on this evidence, it becomes more than a mere possibility that the driver, *799 in the exercise of ordinary prudence, should have become aware of the deceased as she moved from the south side of the street crossing the strip leading to the edge of the street and then traveling at least eleven feet, four inches on the street directly in front of the bus. Since a vehicle going fifteen miles per hour travels only 15-17 feet during the average reaction time, the jury could have found that the driver had an opportunity, by the exercise of reasonable care, to avoid hitting the deceased by putting on her brakes and slowing down to allow the child to pass, by swerving the bus or by stopping.[1]
Having determined that the "findings of fact compatible with the doctrine of last clear chance are within the range of those permissible to be made by the jury on the evidence * * *",[2] we must conclude that it was reversible error for the court to refuse the requested charge on last clear chance.
Plaintiff also requests this court to consider the admissibility into evidence of statements made by the eye witness to an investigating officer and render a decision on this point to expedite the orderly retrial of the cause. Plaintiff contends that the statements of eye witness told to an investigating officer in the course of his investigation are privileged under § 317.171, Fla. Stat., F.S.A.
Section 317.171, supra, provides in part that: "All accident reports made by persons involved in accidents shall be without prejudice to the individual so reporting and shall be for the confidential use of the department * * *."
The statement of the eye witness which was given to an investigating officer and used for the purpose of impeachment was to the effect that he had chased the deceased across the street with a belt and while doing so the deceased was struck by the bus. This would obviously make his actions a factor in the accident.[3] The intent of the statute in part is to ascertain the cause of accidents which will aid in the solution of highway traffic and safety problems.[4] A privilege of immunity is therefore granted to those who are involved in accidents so that any statements made to an investigative officer will be freely and honestly given without fear of self incrimination. This privilege is applicable when the statements are offered for impeachment as well as when offered in the case in chief.[5] And, the privilege is not for the sole benefit of the party making the statement but for the benefit of the public.[6]
We therefore hold that this eye witness was a person "involved" in an accident as that term is used in § 317.171, Fla. Stat., F.S.A. and that his statement made to the investigating officer was inadmissible into evidence.
Accordingly, the judgment appealed is reversed and the cause remanded for a new trial.
Reversed and remanded.
NOTES
[1] Basden v. Lowery, Fla.App. 1966, 182 So.2d 265; Purdue v. Vogelsang, Fla.App. 1964, 166 So.2d 902; Kravitz v. Morse Auto Rentals, Inc., Fla.App. 1964, 166 So.2d 619; Greenfield v. Frantz, Fla.App. 1962, 144 So.2d 878. See also Williams v. Hutson, Fla.App. 1966, 186 So.2d 558.
[2] Radtke v. Loud, Fla.App. 1957, 98 So.2d 891.
[3] See Baker v. Fletcher, 191 Misc. 40, 79 N.Y.S.2d 580 (1948).
[4] Wise v. Western Union Telegraph Company, Fla.App. 1965, 177 So.2d 765; see Sprague v. Brodus, 245 Iowa 90, 60 N.W.2d 850 (1953).
[5] Ippolito v. Brener, Fla. 1956, 89 So.2d 650, 652.
[6] Sprague v. Brodus, supra note 4.